**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220213-U

Order filed June 21, 2023

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| RICHARD COX, | ) | Appeal from the Circuit Court |
| | ) | of the 21st Judicial Circuit, |
| Plaintiff-Appellant, | ) | Kankakee County, Illinois, |
| | ) | |
| v. | ) | Appeal No. 3-22-0213 |
| | ) | Circuit No. 21-MR-305 |
| | ) | |
| THE BOARD OF TRUSTEES OF THE | ) | |
| KANKAKEE POLICE PENSION FUND, | ) | Honorable |
| | ) | Brenda L. Claudio, |
| Defendant-Appellee. | ) | Judge, Presiding. |

_____

PRESIDING JUSTICE HOLDRIDGE delivered the judgment of the court.
Justices Brennan and Davenport concurred in the judgment.

_____

**ORDER**

¶ 1      *Held*: Denial of a police officer's application for a line-of-duty disability pension was affirmed on administrative review because the Board's determination, that the police officer failed to establish his injury was causally connected to an act of duty, was not against the manifest weight of the evidence.

¶ 2      In an action to review the final decision of an administrative agency, the plaintiff, Richard Cox, appeals the trial court's order affirming the decision of the defendant, the Board of Trustees of the Kankakee Police Pension Fund (Board), to deny him a line-of-duty disability pension.

¶ 3                                    I. BACKGROUND

¶ 4        Cox joined the Kankakee Police Department (Department) on March 27, 2000, as a police officer. On April 15, 2022, Cox filed his application for a line-of-duty disability pension pursuant to section 3-114.1 of the Illinois Pension Code (Pension Code) (40 ILCS 5/3-114.1 (West 2020)), and alternatively, a not-on-duty disability pension pursuant to section 3-114.2 of the Pension Code (*id.* §3-114.2). Cox's disability claim was premised on an injury to his right shoulder he maintained occurred on October 19, 2017, while he attempted to restrain an unruly female in the emergency room at Riverside Hospital (incident).

¶ 5        The Board held an administrative hearing on June 18, 2021. With the parties' agreement, the Board admitted all written medical reports of examinations and other documentation into evidence, in lieu of live testimony. Cox testified at the hearing that, on October 19, 2017, he experienced pain in his right shoulder during the incident, but did not seek immediate treatment because he believed that he only strained a muscle. Cox testified that he informed his supervisor, Lieutenant David Skelly, of the injury when he returned to the station. Cox completed a "Field Report" detailing the incident from earlier that day, but did not disclose a shoulder injury.

¶ 6        After the incident, Cox continued to work full-time without restriction. On March 23, 2018, Dr. Ryan Sullivan treated Cox for a right knee injury he experienced descending the stairs at his home the day before. Three days later, on March 26, 2018, Cox sought medical treatment, for the first time, for his shoulder from Dr. Michael Corcoran. On April 3, 2018, an MRI revealed Cox had a torn rotator cuff and possible torn labrum in his right shoulder.

¶ 7        On April 9, 2018, Cox provided written notice of his shoulder injury to the Department for the first time by filing the "Employee Injury Report and Supervisor's Initial Investigation Report." In a letter dated April 14, 2018, to Commander Christopher Kidwell, Skelly stated that Cox spoke

with him on or about March 31, about an injury he received on October 19, 2017, at Riverside Hospital. He detailed the incident as Cox recalled it and added, "Cox advised me that I was working on the date of the injury and he stated that following the call he came to the station and advised me that he may have injured his shoulder during the removal." Skelly stated, "I do not remember that conversation[]" and noted "I try to make it my practice to complete an Officer Injury Report any time an Officer states that they have been injured while on the job whether the Officer wished to have the injury checked at that time or not." No such report was filed on the date of the incident.

¶ 8        On June 3, 2018, Cox underwent outpatient arthroscopic right shoulder rotator cuff repair. Following surgery, Cox never returned to full duty police work.

¶ 9        Cox filed a collateral claim pursuant to the Illinois Workers' Compensation Act (820 ILCS 305/1 *et seq.* (West 2018)) for the same incident and injury. Cox presented to Dr. Troy Karlsson for an independent medical examination. Dr. Karlsson's report, dated January 15, 2019, provided that Cox's reported cause of injury would only stand if there was corroborative evidence from other police personnel or reports from the incident. In response to whether Dr. Karlsson's diagnosis was causally related to the incident, he reasoned that without corroborating evidence, he would consider the injury the result of a degenerative change.

¶ 10       On February 20, 2020, Cox underwent a Functional Capacity Assessment (FCA), which concluded he was capable of performing at the "heavy" demand level of his full-duty job description. Dr. Karlsson examined Cox again and provided a supplemental report dated March 16, 2020, stating that he believed Cox would be safest working in a position that did not require public contact or the potential for the need for physical confrontation or physical defense of himself or others. He noted that, although the FCA showed Cox could be at a heavy activity level for his

job description, Cox reported having pain and a feeling of weakness in the shoulders and that he would not feel safe if he were in a confrontation. Dr. Karlsson stated that Cox's diagnosis was causally related to the incident. He offered no written explanation as to the change in his causation opinion from his previous examination.

¶ 11   Dr. Corcoran, Cox's original treating physician, examined him on March 2, 2020, and placed him at maximum medical improvement and approved his return to work with light-duty work restrictions. Cox continued light-duty work with the Department until May 1, 2020.

¶ 12   Three independent medical providers examined Cox: Dr. Nikhil Verma, Dr. Jeffrey Williamson-Link, and Dr. Prasant Atluri. Each reviewed Cox's medical records and job description detailing the requirements of a police officer for the Department. In his report, dated March 8, 2021, Dr. Verma opined, "patient does have a current disability of his right shoulder that prevents him from performing full service as a police officer." In his report, dated March 23, 2021, Dr. Williamson-Link opined, "the applicant is disabled from performing full duties in the police department." In his report, dated April 1, 2021, Dr. Atluri relied on the FCA to conclude "[b]ased upon the available information, Officer Cox is not disabled from resuming his full duties in the police department." Each physician also opined that the medical records were consistent with the history provided by Cox and the incident served as the cause of Cox's injury.

¶ 13   The Board found Cox suffered a shoulder injury, resulting in disability, but the injury was not causally connected to an act of duty in his role as a police officer. The Board believed that Cox's testimony about his right shoulder injury and the way he alleged it occurred was confusing and conflicting. The Board emphasized that the evidence did not support the claim that the incident in question either caused or contributed to his disability. Specifically, the Board noted (1) Cox claimed that the pain in his right shoulder was experienced immediately after the incident in

October 2017, but there was no record of such until March 2018; (2) if Cox experienced significant strain in his right shoulder or chest during the incident, which resulted in a 90% partial thickness tear of the cuff, he would have immediately expressed the same to Riverside Hospital where the incident took place; (3) the police "Field Report" providing a detailed description of the incident did not mention any evidence that Cox sustained an injury; (4) Cox claimed that he informed Skelly of his injury the same day when he returned to the station, but Skelly provided that he completes an injury report anytime an officer reports they have been injured on the job and no injury report was completed until almost six months after the incident; and (5) Cox continued to work unrestricted and on full duty after the incident until his first shoulder treatment in March 2018. For these reasons, the Board denied Cox's application for a line-of-duty disability pension and granted his request for a not-on-duty disability pension.

¶ 14        Cox filed a petition for review in the circuit court, asking the court to reverse the Board's decision. The trial court affirmed, and Cox appealed.

¶ 15                                II. ANALYSIS

¶ 16        In administrative review cases, the appellate court reviews the decision of the administrative agency, not the circuit court. *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 531 (2006). When the question presented is whether the record evidence supports denial of the plaintiff's application for a disability pension, it is a question of fact. *Id.* at 534. The findings and conclusions of the Board as to questions of fact shall be held to be *prima facie* true and correct. *Id.* at 534 (citing 735 ILCS 5/3-110 (West 2002)). Questions of fact are reviewed under the manifest weight of the evidence standard. *Wade v. City of North Chicago Police Pension Board*, 226 Ill. 2d 485, 504 (2007). A decision is against the manifest weight of the evidence if the opposite conclusion is clearly evident or if the findings are unreasonable, arbitrary, and not based

5

on any of the evidence. *Scepurek v. Board of Trustees of Northbrook Firefighters' Pension Fund*, 2014 IL App (1st) 131066, ¶ 17. The Board must judge the credibility of the witnesses, assign weight to the evidence, and resolve conflicting evidence. *Id.* ¶ 31. This court, therefore, must affirm the Board's decision where there is competent evidence in the record supporting it. *Covello v. Village of Schaumburg Firefighters' Pension Fund*, 2018 IL App (1st) 172350, ¶ 48. However, we are mindful that under the manifest weight standard, the deference courts afford the administrative agency's decision is not boundless. *Wade,* 226 Ill. 2d at 507; see also *Bowlin v. Murphysboro Firefighter's Pension Board of Trustees*, 368 Ill. App. 3d 205, 210-12 (2006) (a court's review "cannot amount to a rubber stamp of the proceedings below").

¶ 17        The Pension Code provides for a not-on-duty pension and a line-of-duty pension for permanently disabled police officers. 40 ILCS 5/3-114.1, 5/3-114.2 (West 2018). To receive a line-of-duty pension, the disabled officer must show that the disability was incurred in or resulted from the performance of an "act of duty." 40 ILCS 5/3-114.1 (West 2018). The duty-related accident is not required to be the originating or primary cause of the injury, although a sufficient nexus between the injury and the performance of the duty must exist. *Luchesi v. Retirement Board of the Firemen's Annuity & Benefit Fund of Chicago*, 333 Ill. App. 3d 543, 550 (2002). Causation is an issue of fact for the Board's consideration. See *Kouzoukas v. Retirement Board of Policemen's Annuity & Benefit Fund of City of Chicago*, 234 Ill. 2d 446, 472 (2009).

¶ 18        Here, the parties agree that Cox is disabled from performing full-unrestricted duties as a police officer because of his right shoulder limitations. They further agree that the incident of October 17, 2017, at Riverside Hospital was an "act of duty." However, the parties disagree as to whether the disability may be causally related to the incident of October 17, 2017. Our review is narrow. We must determine whether there is sufficient evidence of record to support the Board's

determination that Cox failed to prove a causal relationship between the incident and his disability.

¶ 19    The Board primarily found that the record lacked credible evidence that Cox's disability was related to the October 19, 2017, incident. It stated that Cox's testimony was confusing and conflicting. The Board found it significant that Cox stated that the pain in his right shoulder was experienced *immediately after* the incident in question, but there was no record of any report of the injury or medical treatment until March 26, 2018, five months after the incident. Also, the police "Field Report" of the suspect's arrest, which was filed on the day of the incident and provided a detailed description, did not include any mention of Cox's alleged injury. The Board emphasized the fact that the incident took place in a hospital, but Cox did not report his injury to the hospital staff at that time. The Board also found it important that the "Employee Injury Report and Supervisor's Initial Investigation Report," which gave written notice of Cox's shoulder injury for the first time, was not filed until April 9, 2018, almost six months after the incident. Although Cox testified that he notified Skelly of his injury the day it occurred, the Board found it significant that Skelly unequivocally denied the same. Also of importance was the timing of when Cox sought medical treatment. Specifically, Cox first medical treatment for his right shoulder injury three days after he sought medical treatment for a non-work related knee injury.

¶ 20    The Board concluded that the medical opinions as to causation relied on Cox's self-serving history and, therefore, gave less weigh to them, explaining, the record clearly established otherwise. We note Dr. Karlsson's conflicting opinions as to causation. He offered two different opinions without an explanation as to the change. Dr. Karlsson did not testify, and we find his opinion concerning causation had little importance. Based on the totality of the evidence, considering the medical opinions speculative, rather than conclusive on the issue of causation, was not unreasonable.

¶ 21       Based on the record, we cannot say that the Board's decision was unreasonable, arbitrary, or not based on any of the evidence. We find the Board's determination well-reasoned and based on sufficient evidence of record. Cox, as the claimant, had the burden of proof to establish a causal connection between the incident and his disability, which he failed to do. Thus, the Board's conclusion that Cox failed to prove he was disabled in the line-of-duty and, as such, only entitled to a not-on-duty disability pension was not against the manifest weight of the evidence.

¶ 22                                III. CONCLUSION

¶ 23       For these reasons, the judgment of the circuit court of Kankakee County is affirmed.

¶ 24       Affirmed.